## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **HENRY DANIYAN, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**VIRIDIAN ENERGY, LLC,**<br><br>**Defendant.** | **Case No. 1:14-cv-02715-GLR** |

## DEFENDANT VIRIDIAN ENERGY, LLC'S MOTION TO DISMISS THE COMPLAINT AND REQUEST FOR ORAL ARGUMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Viridian Energy, LLC hereby moves to dismiss the Complaint because it fails to state a claim upon which relief can be granted. The grounds for this Motion are set forth in the memorandum of law filed simultaneously with this Motion.

Dated: October 16, 2014

KELLEY DRYE & WARREN LLP

By: /s/ Daniel S. Blynn
Daniel S. Blynn (Bar no. 16115)
3050 K Street, NW, Suite 400
Washington, DC 20007
Telephone: (202) 342-8634
Facsimile: (202) 342-8451
DBlynn@kelleydrye.com

*Attorneys for Defendant Viridian Energy, LLC*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HENRY DANIYAN, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>VIRIDIAN ENERGY, LLC,<br><br>　　　　Defendant. | Case No. 1:14-cv-02715-GLR |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VIRIDIAN ENERGY,
LLC'S MOTION TO DISMISS THE COMPLAINT

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ..................................................................................2

III.   LEGAL ARGUMENT .............................................................................................4

       A.    Motion to Dismiss Standard.........................................................................4

       B.    Courts Have Dismissed Nearly Identical Class Action Complaints Filed
             Against Other Gas and Energy Suppliers ...................................................7

       C.    Plaintiff Fails to State Any Fraud-Based Claim (Counts I, IV, and V) ................11

             1.    Plaintiff's Fraud-Based Claims Are Not Pled With the Required
                   Specificity Under Fed. R. Civ. P. 9(b).........................................12

             2.    Plaintiff Has Alleged No Actionable Misrepresentation; All of the
                   Challenged Claims are Qualified and Constitute Non-Actionable
                   Puffery.........................................................................................16

             3.    Viridian Had No Duty to Disclose Any of the Alleged Omitted
                   Facts to Plaintiff..........................................................................20

       D.    Plaintiff Fails to Allege Any Facts Relating to Breach; Therefore, the
             Breach of Contract Claim Must Be Dismissed (Count II)....................22

       E.    A Claim for Breach of Implied Covenant of Good Faith and Fair Dealing
             Is Not Cognizable Under Maryland Law (Count III) ............................24

       F.    Plaintiff's Unjust Enrichment Claim Fails Because the Rate Charged is
             Established by the Contract Between the Parties (Count VI)................25

IV.    CONCLUSION......................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aloi v. Moroso Inv. Partners, LLC,*
No. DKC 11-2591, 2013 WL 6909151 (D. Md. Dec. 31, 2013) ...........................13

*Amidax Trading Group v. S.W.I.F.T. SCRL,*
671 F.3d 140 (2d Cir. 2011)....................................................................5

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009)......................................................................5

*ATS Int'l Servs., Inc. v. Kousa Int'l, LLC,*
No. RDB-12-2525, 2014 WL 1407290 (D. Md. Apr. 10, 2014) ...........................12

*Baker v. Sun Co.,*
985 F. Supp. 609 (D. Md. 1997).............................................................24

*Baney Corp. v. Agilysys NV, LLC,*
773 F. Supp. 2d 593, 609 (D. Md. 2011) ...................................................17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).........................................................................4, 5

*Bezmenova v. Ocwen Fin. Corp.,*
No. 8:13-cv-00003-AW, 2013 WL 3863948 (D. Md. July 23, 2013) ...................13

*Cannon v. Wells Fargo Bank, N.A.,*
No. PWG-13-1324, 2014 WL 672687 (D. Md. Feb. 20, 2014)...........................13

*Circle Click Media LLC v. Regus Mgmt. Group LLC,*
No. 12-04000, 2013 WL 1739451 (N.D. Cal. Apr. 22, 2013) ...........................19

*Citaraminis v. Hallowell,*
613 A.2d 964 (Md. 1992) ....................................................................27

*Cohen v. Hertz Group,*
No. 13 Civ. 1205, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ...................15, 17

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,*
911 F.2d 242 (9th Cir. 1990) ...........................................................18, 19

*Cty. Commissioners of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.,*
747 A.2d 600 (Md. 2000) ...............................................................25, 26

*Cutler v. Wal-Mart Stores, Inc.,*
927 A.2d 1 (Md. App. 2007).................................................................24

*Edell & Assocs., P.C. v. Law Office of Peter G. Angelos,*
   264 F.3d 424 (4th Cir. 2001) ................................................................25

*Faistl v. Energy Plus Holdings, LLC,*
   No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012) ................................ passim

*Fink v. Time Warner Cable,*
   714 F.3d 739 (2d Cir. 2013)...........................................................15, 17

*FLF, Inc. v. World Publ'ns, Inc.,*
   999 F. Supp. 640 (D. Md. 1998) ...........................................................26

*Frederick Road Ltd. P'Ship v. Brown & Sturm,*
   756 A.2d 963 (Md. 2000) ...............................................................20, 21

*Goldstein v. Miles,*
   859 A.2d 313 (Md. App. 2004)............................................................18

*Golt v. Phillips,*
   517 A.2d 328 (Md. 1986) ................................................................22

*Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics,*
   905 F. Supp. 169 (S.D.N.Y. 1995) ........................................................19

*Gordon v. Lewis,*
   81 A.3d 491 (Md. App. 2013)............................................................12

*Green v. H & R Block, Inc.,*
   735 A.2d 1039 (Md. 1999) ..............................................................13

*Guilbealt v. R.J. Reynolds Tobacco Co.,*
   84 F. Supp. 2d 263 (D.R.I. 2000) ........................................................16

*Harper v. Mfgr.'s & Trust Co.,*
   No. PJM 10-00593, 2011 WL 768845 (D. Md. Feb. 28, 2011)..............................13

*Harrison v. Westinghouse Savannah River Co.,*
   176 F.3d 776 (4th Cir. 1999) .............................................................6

*Hill v. Cross Country Settlements, LLC,*
   936 A.2d 343 (Md. 2007) ...............................................................25

*Hogan v. Md. State Dental Ass'n,*
   843 A.2d 902 (Md. App. 2004)...........................................................21

*Imagine Medispa, LLC v. Transformations, Inc.,*
   999 F. Supp. 2d 873 (S.D. W.Va. 2014)...................................................18

*In re Int'l Harvester Co.,*
   104 F.T.C. 949 (1984) (Final Order) .................................................................22

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,*
   No. 06-5774, 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009)........................16

*In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.,*
   No. 08-939, 2009 WL 2940081 (D.N.J. Sept, 11, 2009) .......................................27

*Latty v. St. Joseph's Soc'y of Sacred Heart,*
   17 A.3d 155..................................................................................................20

*Lloyd v. Gen. Motors Corp.,*
   916 A.2d 257 (Md. 2007) .........................................................................12, 13

*Louers v. Lacy,*
   No. JKS-102292, 2013 WL 6257572 (D. Md. Dec. 3, 2013)...............................26

*Luskin's, Inc. v. Consumer Protection Div.,*
   726 A.2d 702 (Md. 1999) ..............................................................................22

*Mass Transit Admin. v. Granite Constr. Co.,*
   471 A.2d 1121 (Md. App. 1984) .....................................................................26

*McGraw v. Loyola Ford, Inc.,*
   723 A.2d 502 (Md. App. 1999).......................................................................18

*Md. Envtl. Trust v. Gaynor,*
   803 A.2d 512 (Md. 2002) ..............................................................................20

*Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.*
   643 F. Supp. 1289 (D. Ariz. 1986), *rev'd without opinion,* 803 F.2d 724 (9th Cir.
   1986) .........................................................................................................19

*Moorehead v. Keller,*
   845 F. Supp. 2d 689 (W.D.N.C. 2012) .............................................................5

*Mount Vernon Props., LLC v. Branch Banking and Trust Co.,*
   907 A.2d 373 (Md. App. 2006).................................................................24, 25

*Nemphos ex rel. C.G.N. v. Nestlé USA, Inc.,*
   No. GLR-12-2718, 2013 WL 4501308 (D. Md. Aug. 21, 2013).....................5, 6, 15

*Presley v. City of Charlottesville,*
   464 F.3d 480 (4th Cir. 2006) ...........................................................................4

*Procter & Gamble Co. v. Kimberly-Clark Corp.,*
   569 F. Supp. 2d 796 (E.D. Wisc. 2008) ...........................................................19

*Robinson v. Am. Honda Motor Co., Inc.*,
   551 F.3d 218 (4th Cir. 2009) ...................................................................................18

*Royal Investment Group, LLC v. Wang*,
   961 A.2d 665 (Md. App. 2008)................................................................................25

*RRC Ne., LLC v. BAA Md., Inc.*,
   994 A.2d 430 (Md. 2010) ........................................................................................23

*Sass v. Andrew*,
   832 A.2d 247 (Md. App. 2003)................................................................................12

*Sefton v. Toyota Motor Sales USA*,
   No. 09 C 3787, 2010 WL 1506709 (N.D. Ill. Apr. 14, 2010)..................................16

*Slack v. Suburban Propane Partners, LP*,
   No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010)............................... passim

*Solomon v. Bristol-Meyers Squibb Co.*,
   No. 07-1102, 2009 WL 5206120 (D.N.J. Dec. 30, 2009).......................................16

*Sprint Nextel Corp. v. Simple Cell, Inc.*,
   No. CCB-13-617, 2013 WL 3776933 (D. Md. July 17, 2013) .................................15

*Stewart v. Bierman*,
   859 F. Supp. 2d 754 (D. Md. 2012) .........................................................................12

*Taylor v. NationsBank, N.A.*,
   776 A.2d 645 (Md. 2001) ........................................................................................23

*Therapearl, LLC v. Rapid Aid Ltd.*,
   No. CCB-13-2792, 2014 WL 4794905 (D. Md. Sept. 25, 2014)...............................3

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) ....................................................................................6

*United States Achievement Academy, LLC v. Pitney Bowes, Inc.*,
   458 F. Supp. 2d 389 (E.D. Ky. 2006) ......................................................................19

*Van Holt v. Liberty Mut. Fire Ins. Co.*
   163 F.3d 161 (3d Cir. 1998).....................................................................................12

*Walters v. McMahen*,
   684 F.3d 435 (4th Cir. 2012) .....................................................................................5

*Willis v. Bank of Am. Corp.*,
   No. ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014)........................6, 20

*Yarn v. Hamburger Law Firm, LLC,*
    No. RDB-12-3096, 2013 WL 5375462 (D. Md. Sept. 24, 2013) ...................................5, 6, 14

*Yesko v. Fell,*
    No. ELH-13-3927, 2014 WL 4406849 (D. Md. Sept. 5, 2014)...................................................6

**STATUTES**

15 U.S.C. §§ 45, 52, 55 .................................................................................................................22

Electric Customer Choice and Competition Act of 1999, Md. Code Ann., Pub. Util. Code
    §§ 7-501, *et seq*..............................................................................................................................2

Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et seq*............ passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ................................................................................................. passim

Fed. R. Civ. P. 12................................................................................................................................1

Fed. R. Civ. P. 12(b)(6).................................................................................................................4, 18

L.R. 105.1 ..........................................................................................................................................1

Pursuant to Fed. R. Civ. P. 12 and L.R. 105.1, defendant Viridian Energy LLC ("Viridian") respectfully submits this memorandum of law in support of its motion for an order dismissing all counts set forth in Plaintiff's Complaint (ECF 1).

## I.   **INTRODUCTION**

In this putative class action, Plaintiff Henry Daniyan alleges that he was the victim of a so-called "bait-and-switch" scheme conducted by Viridian. Plaintiff claims that he switched his energy service to a Viridian variable rate contract based upon promises of "energy savings and competitive rates." Nowhere in his Complaint does Plaintiff claim that he did not receive the energy services he paid for or that those services were somehow defective. Instead, Plaintiff alleges that he was injured when, after achieving initial savings, he was later charged rates that he claims were higher than the rates charged by the local public utility (notwithstanding that he does not even claim to have been a customer of the local utility prior to switching service).

Each of the counts alleged in Plaintiff's Complaint fails to state a claim. The document upon which Plaintiff relies to form the basis for his Complaint – the Viridian website – does not contain any misrepresentations or omissions regarding the rates that would be charged. To the contrary, the website *expressly disclaimed* any guarantee of future energy savings over the local utility or competitive rates generally. Further, the written agreement governing the relationship between Plaintiff and Viridian (the "Contract") also explicitly provided that he entered into a variable rate agreement with Viridian and that his rate "will vary on a month-to-month basis" after an initial one-month rate-guarantee period. The Contract did not contain any cap or limitation on the amount that his rate could increase or decrease each month. In light of the website disclosures and Plaintiff's own Contract with Viridian, Plaintiff's fraud-based claims – *i.e.*, claims for violation of Maryland's Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101, *et seq.* (Count I) common law fraud, including fraudulent inducement,

fraudulent concealment (collectively, Count IV), and negligent misrepresentation (Count V) – fail to state a claim because there are no actionable or material misrepresentations or knowing omissions regarding the rates that Viridian would charge in the future, and Viridian owed no legal duty to Plaintiff to disclose any of the facts it allegedly omitted.

Similarly, Plaintiff's breach of contract claim (Count II) fails because Plaintiff does not make *any* factual allegations regarding the breach of any provision of the Contract.  As for Plaintiff's charge of breach of the implied covenant of good faith and fair dealing (Count III), the claim necessarily fails because Maryland law does not recognize that claim as an independent cause of action.  Finally, his unjust enrichment claim (Count VI) fails because the rates Viridian charged are governed by the terms of Plaintiff's Contract with Viridian.

Given the failure to state any viable claim against Viridian, Plaintiff's Complaint should be dismissed with prejudice in its entirety.

## II.    **<u>FACTUAL BACKGROUND</u>**

In 1999, legislation was signed in Maryland, which permitted third-party energy suppliers, such as Viridian, to sell electricity and natural gas directly to consumers.  *See* Electric Customer Choice and Competition Act of 1999, Md. Code Ann., Pub. Util. Code §§ 7-501, *et seq*.  Viridian is licensed to provide and does provide such energy services in Maryland.  Md. Pub. Serv. Comm'n License No. R-1840.

Plaintiff alleges that Viridian served as his energy supplier, although he does not identify when he switched his service to Viridian.  Compl., ¶¶ 5, 23.  He claims that, before switching service to Viridian, he saw the following statements on Viridian's website:

- "[G]reen energy doesn't have to cost more, and we think everyone deserves more and better choices."

- "Choosing a greener energy product shouldn't hurt your budget.  With Viridian you can help the environment with affordable energy solutions."

- "[W]ere not just giving our customers a higher-quality product that often costs less than conventional 'brown' energy, we're creating positive change within the energy industry itself."

- "We offer customers a simple way to help the environment without changing their habits.  Because our energy comes from renewable and responsible sources, you can do something better for the environment at a competitive price."

- "Viridian strives to offer the most competitive rates possible to customers. Deregulation allows electricity suppliers such as Viridian to buy energy wholesale from competitive providers and pass the potential savings along to customers."

*Id*. at ¶¶ 12, 23.  He also claims that he saw a disclaimer on Viridian's website stating:

> ***Viridian's rates may be higher or lower than the utility's rate.  On average,*** despite fluctuations, ***we have historically provided competitive rates to our customers***, since we set our rate offerings each month for each market separately.

*Id*. at ¶¶ 16 (emphasis added), 23 (Plaintiff viewed the "above-described website advertisements").

Plaintiff also asserts that he spoke with an unidentified independent sales agent before switching to Viridian, but he does not identify when he spoke to that agent or what that agent said to him. *See id*. at ¶ 23.  Plaintiff subsequently entered into an Electricity Sales Agreement (the Contract) with Viridian for the provision of energy services.  *See* Electricity Sales Agreement, attached as Exhibit "1."[1]  With respect to the rate charged for such services, the Contract stated as follows:

> **Price:  *The price for electricity supply services will vary on a month-to-month basis.*** The price for the first month of electric generation and transmission service will be the price agreed upon in the Customer Application. ***After the first month***

---

[1]    The Court may consider documents relied upon in the Complaint but not attached without converting the motion to dismiss into a motion for summary judgment, as those documents form the basis for Plaintiff's claims. *Therapearl, LLC v. Rapid Aid Ltd.*, No. CCB-13-2792, 2014 WL 4794905, at *5 (D. Md. Sept. 25, 2014).  The purpose of this rule is to avoid a situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied-upon document.

*of service, you agree and understand that charges may fluctuate* with month-to-month wholesale market conditions applicable to the LDC service territory.

Exh. 1 (bold italics added). The Contract contains no cap on the amount by which Plaintiff's rates could increase or decrease each month. Plaintiff asserts that, after switching to Viridian, he "enjoyed reasonable energy rates for a short while," but, eventually, his rates increased to levels higher than those that his local utility provider, Baltimore Gas & Electric ("BG&E"), was charging each month. Compl., ¶ 24.

Plaintiff attempts to transform the statements on the Viridian website into something that they are not – unqualified representations of "guarantee[d] customer satisfaction" and "low rates," and "promises of energy savings and competitive market rates." *Id.* at ¶¶ 5 12. Based on nothing more than non-actionable "puffery," Plaintiff alleges that Viridian's representations regarding its energy product were "fraudulent and deceptive" and "misleading," and that the variable rates Viridian charged were somehow out of line with the express terms of the Contract, which permitted higher or lower rates from month-to-month.

## III.  LEGAL ARGUMENT

### A.  Motion to Dismiss Standard

The purpose of a motion to dismiss is "to test the sufficiency of a complaint . . ." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint must allege "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . ." *Id.* at 555. This pleading

4

standard was refined further by the Supreme Court in *Ashcroft v. Iqbal*, where the Court emphasized the distinction between factual contentions and legal conclusions, and cautioned against accepting as sufficient "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 556 U.S. 662, 678 (2009). After *Twombly* and *Iqbal*, "'complaints in civil actions [must] be alleged with greater specificity than previously was required.'" *Yarn v. Hamburger Law Firm, LLC*, No. RDB-12-3096, 2013 WL 5375462, at *3 (D. Md. Sept. 24, 2013) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)).

In *Yarn*, this Court espoused upon the "two working principles" that it must apply when determining a motion to dismiss. *Id.* (quoting *Iqbal*, 556 U.S. at 678). First, the factual and legal elements of a claim should be separated, with the Court accepting the complaint's well-pleaded facts as true and disregarding any legal conclusions. *Id.* Second, the Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678). In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint must "show" such an entitlement with facts. A complaint that does not demonstrate sufficient facts to support a plausible claim for relief cannot survive a motion to dismiss. Where documents relied upon or referenced in the complaint are attached to the motion to dismiss and contradict the allegations in the complaint, the documents control. *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011); *Moorehead v. Keller*, 845 F. Supp. 2d 689, 693 n.1 (W.D.N.C. 2012).

Further, under Fed. R. Civ. P. 9(b)'s heightened pleading standard, all averments of fraud must be stated with particularity. *Nemphos ex rel. C.G.N. v. Nestlé USA, Inc.*, No. GLR-12-2718, 2013 WL 4501308, at *8 (D. Md. Aug. 21, 2013) (Russell, J.) (dismissing MCPA and common law fraud claims for failure to plead with required specificity). "This standard requires

the plaintiff to 'at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)); *Yarn*, 2013 WL 5375462, at *6 (under Rule 9(b), circumstances constituting fraud must be stated with particularity such that a plaintiff "'identif[ies] with some precision the date, place and time of active misrepresentations . . .'") (citation omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Nemphos*, 2013 WL 4501308, at *8 (citation and internal quotations omitted). As the Fourth Circuit has explained, Rule 9(b) serves several salutary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Yesko v. Fell*, No. ELH-13-3927, 2014 WL 4406849, at *4-5 (D. Md. Sept. 5, 2014) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).[2]

---

[2] Although Rule 9(b) is applied less strictly to claims of omission of materials facts, as opposed to affirmative misrepresentations, its "particularity" pleading requirement still exists; meeting that requirement, however, "will likely take a different form." *Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 WL 3829520, at *8 (D. Md. Aug. 1, 2014) (dismissing fraudulent concealment/omission claim).

### B.      Courts Have Dismissed Nearly Identical Class Action Complaints Filed Against Other Gas and Energy Suppliers

As explained above, *supra* at Section I, Plaintiff alleges that he switched his energy service to a Viridian variable rate contract based upon promises of "energy savings and competitive rates." He further claims that, after achieving initial savings, he was later charged rates that were higher than the rates charged by his local public utility.

This action is not the first time that a consumer unhappy with higher energy rates than expected following an initial rate-guarantee period has filed a class action against his energy or gas supplier. In two recent decisions issued in cases strikingly similar to this litigation, the District of New Jersey has dismissed claims asserting violations of state consumer protection acts, common law fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. While not binding on this Court, those decisions contain well-reasoned, detailed analyses that should be instructive to this Court's determination of Viridian's Motion to Dismiss.

Most recently, in *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012), the plaintiff filed a class action alleging that Energy Plus Holdings, LLC, an energy supplier, lured potential customers by making exaggerated claims of energy savings when, in fact, the purported savings were illusory and consumers ended up paying substantially higher rates for their energy. *Id*. at \*1. Energy Plus advertised, among other things, that consumers could "[s]ave on your bill – Energy Plus customers are currently saving with a competitive rate that is approximately 10% below your local utility company," and "[s]ave up to 10%." *Id*. In its advertising and contracts, Energy Plus disclosed the variable nature of its rates: "The Energy Plus rate is variable and therefore subject to change each billing cycle. Current and historical rates should not be taken as a guarantee of future rates . . ." (in advertising), and "The

initial rate that applies to your first month of service is listed below . . . Variable price each month will reflect the cost of electricity, including energy, capacity . . . and other market factors . . ." (in contracts). *Id.* at *2. Within a month after enrolling with Energy Plus, the plaintiff began paying as much as 36% more for his electric service than he did during his initial fixed-rate period, and his variable rates were "significantly more" than the rates charged by other energy providers. *Id.* at *3.

The *Faistl* plaintiff asserted claims for violation of the New Jersey consumer protection statute, common law fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. All claims, however, were dismissed. The court held that the fraud and consumer protection law claims failed because Energy Plus had disclosed in its advertising materials that its rates may vary each billing cycle. More specifically, with respect to the common law fraud claim, the court found that there was no affirmative misrepresentation as to the fact or amount of savings a consumer would realize by enrolling with Energy Plus because the savings claim was not a guarantee of any specific percentage of savings, "particularly when read in conjunction with" the variable rate disclosures in the Energy Plus advertising and contract. *Id.* at *4. Further, "[a]s to the alleged omission – failure to disclose that the rates charged would rise in the future – the actual terms of the parties' Agreement clearly indicates that . . . the monthly rates would be 'variable' . . ." *Id.* ("under either theory, Plaintiff has failed to plead a claim of fraud that is plausible on its face."). The consumer protection act claim failed for largely the same reasons, with the court concluding that there was no "unlawful practice worthy of protection" because "[t]he terms of the parties' Agreement clearly provided for and explained the actions that [Energy Plus] ultimately took – namely the provision of gas and electric services at 'variable' monthly rates." *Id.* at *6.

The court dismissed the breach of the implied covenant of good faith and fair dealing claim because there were no facts alleged that would support the theory that Energy Plus exercised its discretionary price-setting authority under the terms of its variable rate contracts in bad faith. *Id.* at *7. The court found that the contract claim could not lie because the plaintiff failed to identify any specific term of the contract that actually was breached, *id.*, and the unjust enrichment claim was dismissed because the plaintiff received the energy services for which he paid. *Id.* at *8.

Similarly, in *Slack v. Suburban Propane Partners, LP*, No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010), the District of New Jersey dismissed the plaintiff's complaint, alleging, among other things, violations of four states' consumer protection statutes and unjust enrichment, which were asserted against a nationwide marketer and distributor of energy products, including propane. The facts in *Slack* were particularly egregious. There, the defendant's customers received propane supply through an automatic delivery system, with scheduled deliveries at dates and times set by the defendant. *Id.* at *1. The defendant, however, did not meaningfully disclose how it determined its propane prices and typically did not disclose the price that it charged to its customers until after it already had delivered the propane. *Id.* The price also was not made available to residential customers until after their tanks were filled, even when they asked for the price ahead of time. *Id.* As a result, customers often were surprised by the prices that the defendant charged them for propane deliveries, "which frequently exceed[ed] competitors' prices and industry averages by significant amounts." *Id.*

While the defendant advertised that consumers would get the "best value" and that its prices were "competitive" with those charged by other companies, the plaintiffs claimed that "to the contrary, [defendant's] prices are generally higher than the prevailing market price for

propane." *Id.* Further, when customers complained about the defendant's "exorbitant and arbitrary" prices, it failed to make proper price adjustments and, instead, offered "deceptive and misleading" explanations and excuses for the overcharges. *Id.* The defendant's "Residential Service Agreement" did not disclose the method by which it calculated its prices, the circumstances under which it might impose fees, or the amount of such fees. "Instead, the Customer Agreement contains information limited to [defendant's] 'initial' prices and/or fees and states that such prices and/or fees are 'subject to future change based upon market fluctuations and other factors' with no further explanation." *Id.* at *2.

The plaintiffs alleged that the defendant unlawfully "jacked" its prices and fees for reasons inconsistent with market fluctuations or other legitimate business practices. They also claimed that the defendant's business practices were fraudulent, deceptive, misleading, unconscionable, and that the defendant unlawfully and knowingly concealed and omitted material terms relating to defendant's prices, fees, and service.[3] The court, however, dismissed ***with prejudice*** the consumer protection act and unjust enrichment claims, and dismissed the other claims without prejudice. Specifically, the consumer fraud claims failed because the "best value" and "competitive prices" representations were non-actionable puffery, and the defendant explicitly reserved "the right to increase charges and/or fees in any amount [it] deemed fit (based upon 'market fluctuations and other factors')." *Id.* at *7 ("Simply put, Plaintiffs' allegations challenge the enforceability of a contract. Without more, such allegations do not . . . constitute

---

[3]     According to the court:

The crux of Plaintiffs' Complaint . . . that: (1) Plaintiffs entered into automatic purchase agreements with [defendant]; (2) the agreements provided an "initial" quote of prices and/or fees with the caveat that such prices and/or fees were subject to change "based upon market fluctuations and other factors;" (3) [defendant] delivered the propane to Plaintiffs as agreed upon; and (4) in doing so, [defendant] charged prices and/or fees which, according to Plaintiffs, were neither "fair" nor "reasonable."

*Id.* at *6.

an unlawful practice worthy of protection under [state consumer protection law].").  The unjust enrichment claim was dismissed because the plaintiffs, in fact, received the propane for which they paid. *Id.* at *9.

The allegations and claims alleged in Plaintiff's Complaint against Viridian are nearly identical to those levied against the defendant in *Faistl*, and much less abhorrent than those asserted against the defendant in *Slack*.  As detailed below, for many of the same reasons why the claims failed in *Faistl* and *Slack*, Plaintiff's claims against Viridian fail here as well. Dismissal is warranted.

### C.     Plaintiff Fails to State Any Fraud-Based Claim (Counts I, IV, and V)

The cornerstone to Plaintiff's MCPA claim (Count I), and common law fraud (including fraudulent inducement) (Count IV), fraudulent concealment (Count IV), and negligent misrepresentation (Count V) claims is that Viridian induced customers to switch from their energy suppliers by allegedly falsely representing that consumers can "save money on their energy bills" with Viridian, Compl., ¶¶ 48, 52, 73, 86; and advertising "a low promotional rate offer and energy savings, and then charging exorbitant non-competitive energy rates following the promotional period."  *Id.* at ¶ 47.  Plaintiff also claims that Viridian failed to disclose or adequately inform consumers that its rates are higher than its competitors, not competitive in the market, "almost guaranteed to increase substantially" after the initial rate-guarantee period, and that its rates "generally increase and will and will rarely be lower than the competitive market price."  *Id.* at ¶¶ 49-51, 74, 75, 86.  Plaintiff concludes that Viridian committed Maryland statutory and common law fraud and unfair trade practices when he was charged higher rates than those of his local utility provider, BG&E.  *Id.* at ¶ 24.  Plaintiff does not contend that he or any other consumers failed to receive the electricity they were promised; nor does he claim that there was anything untrue about any of Viridian's other advertising statements.  His ***only***

complaint is that he did not achieve the cost savings he anticipated.   Yet disagreements between a consumer and a business over increased price do not constitute consumer fraud, nor does "[m]ere customer dissatisfaction." *Van Holt v. Liberty Mut. Fire Ins. Co.* 163 F.3d 161, 168 (3d Cir. 1998).    As described below, none of Plaintiff's fraud-based claims state a cause of action against Viridian and dismissal is appropriate.

### 1.   Plaintiff's Fraud-Based Claims Are Not Pled With the Required Specificity Under Fed. R. Civ. P. 9(b)

"[A] consumer bringing a private cause of action under [the MCPA] must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing cases).   The elements of common law fraud, fraudulent inducement, and negligent misrepresentation are all the same – a plaintiff must demonstrate that: (1) the defendant made a false representation to the plaintiff (falsity); (2) the defendant knew of the falsity or was recklessly indifferent to the truth of the representation (knowledge); (3) the defendant intended to defraud the plaintiff (intent); (4) the plaintiff justifiably relied upon the misrepresentation (justifiable reliance); and (5) the plaintiff suffered some compensable injury or damage from the misrepresentation (injury). *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (Md. 2007) (negligent misrepresentation); *Sass v. Andrew*, 832 A.2d 247, 260 (Md. App. 2003) (common law fraud); *ATS Int'l Servs., Inc. v. Kousa Int'l, LLC*, No. RDB-12-2525, 2014 WL 1407290, at *4 (D. Md. Apr. 10, 2014) (fraudulent inducement).

To state a cause of action for fraudulent concealment, the plaintiff must establish the same intent, justifiable reliance, and injury elements as fraud, fraudulent inducement, and negligent misrepresentation claims, but also show that the defendant owed a duty to the plaintiff to disclose a material fact and that the defendant failed to disclose that fact. *Gordon v. Lewis*, 81

A.3d 491, 500-501 (Md. App. 2013) (quoting *Green v. H & R Block, Inc.*, 735 A.2d 1039 (Md. 1999)). This same "duty of care" element is essential to a negligent misrepresentation claim as well. *Lloyd*, 916 A.2d at 273 (among other elements, plaintiff must show "the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement").

In a diversity action where state law governs fraud-based claims, such as here, the pleading requirements of Fed. R. Civ. P. 9(b) apply. *Cannon v. Wells Fargo Bank, N.A.*, No. PWG-13-1324, 2014 WL 672687, at *15 (D. Md. Feb. 20, 2014) ("To the extent that Plaintiff's complaint can be construed to plead fraudulent concealment, any such claims must be 'stat[ed] with particularity.'") (quoting Fed. R. Civ. P. 9(b)); *Aloi v. Moroso Inv. Partners, LLC*, No. DKC 11-2591, 2013 WL 6909151, at *9 n.4 (D. Md. Dec. 31, 2013) (Chasanow, J.) ("Several district courts within the Fourth Circuit, including the undersigned, have applied Rule 9(b) to negligent misrepresentation claims as well [as fraud claims]."); *Bezmenova v. Ocwen Fin. Corp.*, No. 8:13-cv-00003-AW, 2013 WL 3863948, at *5 (D. Md. July 23, 2013) ("Plaintiffs must plead fraud claims under the MCPA with particularity" under Rule 9(b));[4] *Harper v. Mfgr.'s & Trust Co.*, No. PJM 10-00593, 2011 WL 768845, at *3 (D. Md. Feb. 28, 2011) ("a heightened pleading burden is placed on plaintiffs when alleging . . . fraudulent inducement"). Here, by Plaintiff's own admission, Counts I, IV, and V sound in fraud as they arise from Viridian's marketing campaign for its electricity services, which he alternately alleges was "fraudulent," "deceptive," "misleading," and "false." Compl., ¶¶ 45-47, 53, 55, 72-75, 77, 78, 80, 82, 87-88. Thus, Rule 9(b)'s heightened pleading standard applies to Counts I, IV, and V.

---

[4]     In his order dismissing the plaintiff's MCPA and fraud claims in *Bezmenova*, Judge Williams also noted that, while MCPA claims must be established by a preponderance of the evidence, fraud claims "are generally more difficult to plead and prove than MCPA misrepresentation claims" because they must be pled and proved by clear and convincing evidence – a higher standard. 2013 WL 3863948, at *6.

Plaintiff's Complaint, however, lacks both the precision and adequate substantiation required under Rule 9(b) when alleging fraud, as he does here. *Yarn*, 2013 WL 5375462, at *6 (under Rule 9(b), "'the circumstances constituting fraud must be stated with particularity' such that a plaintiff 'identif[ies] with some precision the date, place and time of active misrepresentations or the circumstances of active concealments.'") (citation omitted). All we know about Plaintiff is what little information he provides in Paragraphs 5, 23, and 24 of the Complaint – *i.e.*, he switched to Viridian "with the promise of energy savings and competitive market rates," Compl., ¶ 5; he viewed Viridian's website and spoke with an unidentified sales agent before switching to Viridian, *id.* at ¶ 23; and he "enjoyed reasonable energy rates for a short while" but his rates eventually rose above his local utility provider. *Id.* at ¶ 24.

Although Plaintiff claims that he viewed statements appearing on Viridian's website before switching service, he does not identify when he viewed them or even when he switched to Viridian. That is a significant pleading shortcoming as the Viridian website statements excerpted in the Complaint are those that appear on the *current* version of the site, *see id.* at ¶ 12 (citing current Viridian website); Plaintiff does not allege that those appeared on Viridian's website *at the time or before* he enrolled with Viridian. Viridian is left to guess at what website advertising Plaintiff saw when he switched his service to Viridian. Moreover, the focus of Plaintiff's Complaint is on Viridian's allegedly false affirmative representations "that consumers would save money on their energy bills by switching to Viridian" and "the cost savings benefits of switching to Viridian." *Id.* at ¶¶ 48, 52, 72-73, 87. Yet, none of the website advertising statements set forth in the Complaint make such representations. *Compare id.* at ¶ 12.[5] The

---

[5]     In fact, the only Complaint reference to a representation appearing on the Viridian website regarding "savings" is the following: "Viridian strives to offer the most competitive rates possible to customers. Deregulation allows electricity suppliers such as Viridian to buy energy wholesale from competitive providers and pass the *potential savings* along to customers." *Id.* at

closest Plaintiff comes is by alleging that Viridian "also advises its [independent sales agents] to advertise to their customers that by switching to Viridian, they can help the environment while enjoying costs savings." But, Plaintiff does not allege that the unidentified sales agent with whom he spoke made such a representation. *See* Compl., ¶24. In fact, the Complaint is completely silent on what the sales agent said to Plaintiff; all Plaintiff pleads is that he spoke to an agent before switching to Viridian. *See id.* In short, Plaintiff has failed to provide the "who, what, when, and where" required under Rule 9(b).

This Court and others have not hesitated to dismiss similar complaints for failing to comply with Rule 9(b)'s heightened pleading requirements. *See, e.g., Nemphos*, 2013 WL 4501308, at *8 ("Here, [plaintiff] generally alleges that Nestlé and Dannon marketed their fluoridated bottled water as 'the one with kids in mind,' with no mention as to the time, place, or particular marketing materials of the alleged fraud. She has not, therefore, pled her fraud and MCPA claims with the particularity required under Rule 9(b).") (internal citation omitted); *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CCB-13-617, 2013 WL 3776933, at *5 (D. Md. July 17, 2013) ("Here, Sprint alleges that the defendants 'regularly and systematically misrepresent to Sprint that the Phones are being purchased for a legitimate purpose, that the Phones would be used by Defendants or other legitimate consumers on Sprint's wireless network, that they will

---

¶ 12 (emphasis added). The qualification to the savings claim – *i.e.*, "potential savings" – belies any assertion by Plaintiff that savings were guaranteed. *See, e.g., Fink v. Time Warner Cable*, 714 F.3d 739, 742 n.3 (2d Cir. 2013) (affirming dismissal of false advertising claims and holding that a promise to provide "up to" a certain Internet speed is not a guarantee that that speed will be achieved); *Cohen v. Hertz Group*, No. 13 Civ. 1205, 2013 WL 9450421, at *2 (S.D.N.Y. Nov. 26, 2013) (dismissing fraud claims because "[t]he advertisements at issue did not, however, represent that Hertz's customers were guaranteed a particular discount each time they used the Promo Code, nor did the advertisements state that there was any minimum discount to which the customers were entitled."); *Faistl*, 2012 WL 3835815, at *4 ("'save up to 10%' does not, without more, guarantee any particular percentage of savings").

pay all related charges, and otherwise perform in accordance with the Terms and Conditions.' . . . In light of Rule 9(b), these generalized allegations are insufficient.").[6]

Plaintiff has done nothing to comply with his pleading burden under Rule 9(b).  Based on the Complaint, Viridian knows nothing about the who, what, when, where, or why of his exposure to the alleged fraud.  Indeed, he fails to plead even the minimum required amount of precision or substantiation to make out a fraud claim.  Instead, he leaves both this Court and Viridian, who is required to defend against these claims, completely in the dark.  Accordingly, Counts I, IV, and V should be dismissed for failing to plead with particularity under Rule 9(b).

> **2.    Plaintiff Has Alleged No Actionable Misrepresentation; All of the Challenged Claims Are Qualified and Constitute Non-Actionable Puffery**

Plaintiff conclusorily alleges in his Complaint that Viridian misrepresents that consumers (1) can "save money" on their energy bills, Compl., ¶¶ 5, 8, 10, 48, 52, 73, 86; and (2) that consumers will receive "low introductory rates" followed by "competitive rates," *id.* at ¶¶ 5, 10, 12, 74, 86.  Neither of these alleged claims made by Viridian, however, are actionable as a matter of law.

---

[6]    *See also Sefton v. Toyota Motor Sales USA*, No. 09 C 3787, 2010 WL 1506709, at *5 (N.D. Ill. Apr. 14, 2010) (dismissing deceptive trade practices act claim because complaint failed to "identify any *specific* communication, nor point to the particular signs, advertisements, or manuals that were responsible for the misrepresentation," even though plaintiff attached as an exhibit a "packet of materials" that purported to contain an alleged misrepresentation) (emphasis in original); *Solomon v. Bristol-Meyers Squibb Co.*, No. 07-1102, 2009 WL 5206120, at *10 (D.N.J. Dec. 30, 2009) (dismissing deceptive trade practices act claim where "[p]laintiff fail[ed] to identify any specific advertisements he viewed, how he was misled by these advertisements, how these advertisements affected his prescription for [a pharmaceutical product] and how these advertisements caused any of his injuries"); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 U.S. Dist. LEXIS 58900, at *117 (D.N.J. July 10, 2009) (dismissing fraud and negligent misrepresentation claims where plaintiffs made "sweeping allegations" regarding defendants' promotion of pharmaceutical products, but failed to plead instances in which they, themselves, received a specific representation on which they relied); *Guilbealt v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 269 (D.R.I. 2000) (when a plaintiff claims that a product advertisement or promotion led to his injuries, he must "identify specific advertising he ha[s] seen and how it ha[s] affected him" to satisfy Rule 9(b)).

First, as Plaintiff acknowledges, many of the advertising claims he challenges are qualified.   For example, Plaintiff identifies the following Viridian website statements as "materially misleading," *id.* at ¶ 14:  "[W]e're not just giving our customers a higher-quality product that *often* costs less than conventional 'brown' energy, we're creating positive change within the energy industry itself," *id.* at ¶ 12 (emphasis added); and "Viridian *strives to offer* the most competitive rates possible to customers.  Deregulation allows electricity suppliers such as Viridian to buy energy wholesale from competitive providers and pass the *potential* savings along to customers."  *Id.* (emphasis added).  Plaintiff even concedes that Viridian's website specifically disclaims any guarantee of cost savings: "*Viridian's rates may be higher or lower than the utility's rate.   On average, despite fluctuations, we have historically provided competitive rates to our customers* . . ."  *Id.* at ¶ 16 (emphasis added).   Viridian does not advertise guaranteed savings or rates lower than those charged by a consumer's utility; rather, it truthfully represents only that those outcomes are possible based on historic trends.   Such qualified representations cannot form the basis for a viable fraud-based claim as pled by Plaintiff. *Fink*, 714 F.3d at 742 n.3; *Hertz*, 2013 WL 9450421, at *2; *Faistl*, 2012 WL 3835815, at *4.

Even if they could, however, generalized claims of savings, low prices, and competitive rates constitute non-actionable "puffery."   In *Baney Corp. v. Agilysys NV, LLC*, this Court delineated the requirements for an actionable advertising statement under Maryland law: "Maryland law distinguishes between statements that relate to material facts – which may give rise to cognizable claims – and vague generalities, statements of opinion, or puffery – which are deemed non-cognizable."   773 F. Supp. 2d 593, 609 (D. Md. 2011) (citing cases).   Puffery is "'an exaggeration or overstatement expressed in broad, vague, and commendatory language.'"

17

*Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 881 (S.D. W.Va. 2014) (citation omitted); *Goldstein v. Miles*, 859 A.2d 313, 332 (Md. App. 2004) (puffery is "'vague and indefinite in its nature and terms, or is merely a loose conjectural or exaggerated statement'") (citation omitted).  As the Maryland Court of Special Appeals has explained, puffery "'is not sufficient to support' either a fraud or negligent misrepresentation action, because 'such indefinite representations ought to put the person to whom they are made, upon the inquiry, and if he chooses to put faith in such statements, and abstained from inquiry, he has no reason to complain.'"  *Goldstein*, 859 A.2d at 332 (citation omitted).  Further, "bald assertions or price superiority constitute puffery if they are so sufficiently general that a consumer is unlikely to rely on the statement."  *Imagine Medispa*, 999 F. Supp. 2d at 881.  The determination of whether an advertisement constitutes puffery is usually decided as a matter of law, appropriate to be decided on a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

Courts in Maryland and elsewhere have found that advertising statements similar or identical to those challenged by Plaintiff here constitute mere "sales talk" or puffery, and, as such, cannot give rise to fraud liability.  *See, e.g.*, *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 512-14 (Md. App. 1999) (holding that advertising claims of "the most outstanding value" and "[e]very consideration in pricing and/or trade in allowance has been given to reduce the settlement price to its lowest" were "obvious examples" of puffery amounting to nothing more than "indefinite generality," and affirming summary judgment in favor of defendant on plaintiff's MCPA count); *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 223 (4th Cir. 2009) (finding representation of "lowest operating cost" to be "mere puffery"); *Imagine Medispa*, 999 F. Supp. 2d at 881 (dismissing false advertising claims challenging statements

18

"West Virginia's Lowest Price Weight Loss and Skin Care Clinic" and "Lowest Prices in WV!"); *Cook*, 911 F.2d at 245-46 (holding that statement "we're the low cost commercial collection experts" was puffery despite implication that defendant provided comparable services at lower rates than attorneys operating in same industry); *Slack*, 2010 WL 5392845, at *7 (variable rate propane supplier's advertisement that its prices are "competitive" held to be puffery); *Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 182 (S.D.N.Y. 1995) (holding that statements such as "most cost-effective prices" and "subscription prices as low as possible" were mere puffery).[7]   Not even representations of specific amounts of future savings constitute actionable statements of facts because such claims merely serve as predictions and expressions as to future events.   *See, e.g., Pitney Bowes*, 458 F. Supp. 2d at 397 (dismissing fraud count challenging statement that defendant's system would produce a "savings per year" of $279,152.70 because "[t]his is purely a prediction of future savings and not a statement of fact").

Accordingly, because the statements Plaintiff challenges in his Complaint are properly qualified and, in any event, amount to nothing more than mere puffery, there can be no actionable misrepresentations as a matter of law.   Each of Plaintiff's fraud-based claims fails and Counts I, IV, and V should be dismissed.

---

[7]     *See also Circle Click Media LLC v. Regus Mgmt. Group LLC*, No. 12-04000, 2013 WL 1739451, at *10 (N.D. Cal. Apr. 22, 2013) ("Defendants' representations that their prices are 'low' . . . amount to puffing statements"); *Procter & Gamble Co. v. Kimberly-Clark Corp.*, 569 F. Supp. 2d 796, 799 (E.D. Wisc. 2008) ("When an advertiser claims his store [ ] has the 'lowest' prices or [best product], no one expects that consumers will take his claim at face value"); *United States Achievement Academy, LLC v. Pitney Bowes, Inc.*, 458 F. Supp. 2d 389, 397 (E.D. Ky. 2006) (marketing brochure statement, including "economic cost savings" held to be "example[s] of opinion and sales puffery; [they] will not support a fraud claim"); *Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.* 643 F. Supp. 1289, 1293 (D. Ariz. 1986) (claim of "lower rate" constitutes non-actionable puffery), *rev'd without opinion*, 803 F.2d 724 (9th Cir. 1986).

3.    **Viridian Had No Duty to Disclose Any of the Alleged Omitted Facts to Plaintiff**

Similarly, Plaintiff's allegations that Viridian failed to disclose that its rates were or could be higher than its competitors, were not competitive in the market, and increase after the initial rate-guarantee period expires fail for many of the same reasons as stated above and because the Contract clearly states that "charges may fluctuate" after the first month of service.  Exh. 1; *Faistl*, 2012 WL 3835815, at *4.  They also fail because Viridian owed no duty to disclose such purportedly omitted "facts" to Plaintiff or any other consumer.

"Ordinarily, under Maryland law, a mere failure to disclose a material fact does not constitute fraud, in the absence of a legal duty to disclose that inheres in certain types of transactions." *Willis*, 2014 WL 3829520, at *18; *Latty v. St. Joseph's Soc'y of Sacred Heart*, 17 A.3d 155, 165 (Md. App. 2011) ("Absent an agreement or obligation to disclose, or a special relationship, non-disclosure cannot constitute fraud.").  Further, "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party." *Md. Envtl. Trust v. Gaynor*, 803 A.2d 512, 516 (Md. 2002).  The Maryland Court of Appeals has aptly summed up the law on fraudulent concealment and omissions:

> Ordinarily, non-disclosure does not constitute fraud unless there exists a duty of disclosure.  Absent a fiduciary relationship, this Court has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence, and that, in such cases, the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known.

*Frederick Road Ltd. P'Ship v. Brown & Sturm*, 756 A.2d 963, 976 n.14 (Md. 2000) (internal citations omitted).

In *Hogan v. Md. State Dental Ass'n*, 843 A.2d 902 (Md. App. 2004), the Maryland Court of Special Appeals affirmed the trial court's dismissal of MCPA and fraud claims in a class action alleging that the defendant dental associations deceived consumers by concealing the health risks of implanted dental fillings that contained toxic mercury.  The appellate court explained that "non-disclosure does not constitute fraud unless a special duty to disclose exists," such as where a "confidential or fiduciary relationship" exists.  *Id.* at 908.  Because the plaintiff had not alleged facts demonstrating that a confidential or fiduciary relationship existed between the parties giving rise to a duty to disclose, dismissal was affirmed.  *Id.*

In support of his MCPA claim (Count I), Plaintiff alleges that Viridian failed to disclose that (1) its rates "are substantially higher than its competitors and not competitive in the market," (2) after the initial promotional period, energy rates were almost guaranteed to increase substantially," and (3) its rates "generally increase and will rarely be lower than the competitive market rate."  Compl. ¶¶ 49-51.  Plaintiff makes duplicative omission and fraudulent concealment allegations in Count IV.  *See id.* at ¶¶ 74, 75.  These alleged omissions are really no different than Plaintiff's misrepresentation claim, *i.e.*, that he purportedly was guaranteed savings and would not have to pay more than a competitive rate.  *See supra* at Sections II, III(C)(2).  Nonetheless, even assuming those were actionable omissions, Plaintiff has not alleged any special, confidential, or fiduciary relationship he had with Viridian sufficient to give rise to a duty to disclose.  He does not and cannot allege that such a relationship exists, that he expressly reposited trust in Viridian, or that the relationship between an energy supplier and its customers is intrinsically special, confidential, or fiduciary.  Nor can he point to any statement that was untrue that Viridian failed to correct or any affirmative action Viridian took to "conceal the cause of action."  *Frederick Road*, 756 A.2d at 976 n.14.

As set forth above, the website statements he viewed and the Contract he received expressly contained the information necessary to correct Plaintiff's incorrect assumptions about Viridian's variable rate pricing. Thus, Plaintiff cannot avoid dismissal of his MCPA and fraud-based claims, regardless of whether he is claiming affirmative misrepresentation or omission.[8] Counts I, IV, and V, therefore, should be dismissed.

###### D.    Plaintiff Fails to Allege Any Facts Relating to Breach; Therefore, the Breach of Contract Claim Must Be Dismissed (Count II)

Plaintiff's breach of contract claim in Count II fares no better. Although the Complaint is silent on whether Plaintiff, in fact, had entered into a contract with Viridian, he did. *See* Exh. 1. Plaintiff, however, does not allege any facts regarding the terms of the contract or the alleged breach of the contract. In any event, the Contract Plaintiff entered into with Viridian bars his claim.

---

[8]    It bears noting that, even if Viridian owed a legal duty to Plaintiff (it does not), Plaintiff's fraud-based omission claims would fail because pure omissions, like those alleged by Plaintiff here, are not deceptive. *In re Int'l Harvester Co.*, 104 F.T.C. 949 (1984) (Final Order). In *Int'l Harvester*, the Federal Trade Commission explained that:

> The number of facts that may be material to consumers – and on which they may have prior misconceptions – is literally infinite. . . . Consumers may wish to know about the life expectancy of clothes, or the sodium content of canned beans, or the canner's policy on trade with Chile. Since the seller will have no way of knowing in advance which disclosure is important to any particular consumer, he will have to make complete disclosures to all. A television ad would be completely buried under such disclaimers, and even a full-page newspaper ad would hardly be sufficient for the purpose. For example, there are literally dozens of ways in which one can be injured while riding a tractor, not all of them obvious before the fact, and under a simple deception analysis these would presumably all require affirmative disclosure. The resulting costs and burden on advertising communication would very possibly represent a net harm for consumers.

*Id.* While *Int'l Harvester* was decided under the Federal Trade Commission Act, like the MCPA, the Act makes it unlawful to engage in unfair or deceptive commercial practices, or to induce consumers to purchase products or services through advertising that is misleading in a material respect. 15 U.S.C. §§ 45, 52, 55. The MCPA is Maryland's "Little FTC Act," was patterned after the FTC Act, and is to be interpreted consistently with the FTC Act. *Luskin's, Inc. v. Consumer Protection Div.*, 726 A.2d 702, 716 (Md. 1999); *Golt v. Phillips*, 517 A.2d 328, 332 n.3 (Md. 1986).

"It is well-established in Maryland that a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 440 (Md. 2010) (emphasis in original and citation omitted). Moreover, the defendant's breach must be material. *Id.* at 442 (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). "Finally, in considering the sufficiency of a complaint alleging breach of contract, 'any ambiguity or uncertainty in the allegations is to be construed against the pleader.'" *Id.* at 440. Plaintiff has not pled the essential elements of a breach of contract claim.

Indeed, Plaintiff fails to plead any specific provision of the Contract that was breached. Instead, he asserts that "relevant agreements between Viridian and its customers" – but not necessarily between Viridian and Plaintiff – "do not specify the applicable price," but "the agreements should be deemed to contain an implied contractual term mandating a reasonable price. In this case, a reasonable price would be the prevailing market rates in effect during the applicable class period," and "[t]he best approximation of such a reasonable market price is the rates charged by the Plaintiff and class members' local public utility companies." Compl. ¶ 58. In other words, rather than identifying any actual provision of the Contract that Plaintiff had with Viridian that was breached, Plaintiff asks the Court to "imply" a "reasonable price" term, which he believes "would be the prevailing market rate" and might be "approximated" by looking at the numerous different rates charged by Plaintiff's and each individual class member's public utility company since January 1, 2009. Such speculation and aspiration do not satisfy Plaintiff's burden of pleading the factual terms of the contract that Viridian allegedly breached "with certainty and definiteness" as required under Maryland law. *RRC*, 994 A.2d at 440.

Moreover, as set forth above, the Contract expressly and unequivocally provided that Plaintiff would be charged a variable rate for energy based upon factors set forth in the Contract. "The price for electricity supply services will vary on a month-to-month basis. . . . After the first month of service, you agree and understand that charges may fluctuate with month-to-month wholesale market conditions . . ." Exh. 1.   Plaintiff does not dispute that he was charged the initial rate set forth in the Contract and the variable rate in subsequent months. *See* Compl., ¶ 24. Plaintiff apparently contends that the Contract was breached because, after the rate-guarantee period, he allegedly paid more for service than he would have paid if he purchased energy from his local utility. *See, e.g., id.* at ¶¶ 1, 10, 24-27, 58.  That the subsequent rate was higher than the local utility's rate is not a breach of the Contract, however, because the Contract's variable rate provision, which does not include a cap on rate increases, permits for rates that may be higher than the utility's. *See* Exh. 1; *see also Slack, supra.* Accordingly, Plaintiff has failed to state a claim for breach of contract and Count II should be dismissed.

**E.     A Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Is Not Cognizable Under Maryland Law (Count III)**

In Count III, Plaintiff asserts that Viridian has breached an implied covenant of good faith and fair dealing "by engaging in deceptive and misleading representations of energy costs savings and failing to set its rates at a competitive market rate . . ." Compl., ¶ 66.  Count III necessarily fails, however, because "Maryland law does not recognize an independent cause of action for breach of the implied covenant and fair dealing." *Cutler v. Wal-Mart Stores, Inc.*, 927 A.2d 1, 11 (Md. App. 2007); *Mount Vernon Props., LLC v. Branch Banking and Trust Co.*, 907 A.2d 373, 381-82 (Md. App. 2006); *Baker v. Sun Co.*, 985 F. Supp. 609, 610 (D. Md. 1997).  A breach of that implied covenant "is merely part of an action for breach of contract." *Mount Vernon*, 907 A.2d at 381; *Cutler*, 927 A.2d at 11.  The *Mount Vernon* court explained:

24

> The implied duty of good faith prohibits one party to a contract from acting in such a manner as to prevent the other party from performing under the contract . . . . [This duty is merely part of an action for breach of contract, and so, because [one count] already states a claim for breach of contract, [the count purporting to state a claim for breach of the implied duty of good faith and fair dealing] does not state a different claim and will be dismissed.

907 A.2d at 381; *see also Edell & Assocs., P.C. v. Law Office of Peter G. Angelos*, 264 F.3d 424, 444 (4th Cir. 2001) ("the covenant *is limited to* prohibiting one party from acting in such a manner as to as to prevent the other party from performing his obligations under the contract") (emphasis in original and citation omitted).

Because a claim for breach of the implied covenant of good faith and fair dealing is not cognizable under Maryland law separate and apart from Plaintiff's breach of contract claim, Count III must be dismissed.  Even if the claim could lie, Plaintiff has not alleged in any way that Viridian's alleged misconduct prevented him from performing any one of his own obligations under the contract.  Such shortcoming further supports dismissal of Count III.  *Edell*, 264 F.3d at 444 (dismissing breach of implied covenant of good faith and fair dealing claim because "[plaintiffs] do not allege that [defendant] prevented them from performing their obligations under the alleged contract at issue").

### F.   Plaintiff's Unjust Enrichment Claim Fails Because the Rate Charged is Established by the Contract Between the Parties (Count VI)

To state a claim for unjust enrichment under Maryland law, a plaintiff must establish (1) that he has conferred a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit with the payment of its value. *Royal Investment Group, LLC v. Wang*, 961 A.2d 665, 685 (Md. App. 2008) (citing *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343 (Md. 2007)).  Unjust enrichment cannot succeed where an express contract governs the parties' relationship. *Cty. Commissioners of Caroline Cty. v. J.*

25

*Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) ("The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.") (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121, 1126 (Md. App. 1984));[9] *Louers v. Lacy*, No. JKS-102292, 2013 WL 6257572, at *7 (D. Md. Dec. 3, 2013); *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998). The enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract. *J. Roland Dashiell*, 747 A.2d at 600 ("Even if the County was enriched, such enrichment was not unjust because it was in strict compliance with the terms of [the] contract.").

Plaintiff's sole allegation of unjust enrichment is that ". . . Defendant has been unjustly enriched by their [sic] wrongful receipt of Plaintiff and Class members' monies." Compl., ¶ 95. According to Plaintiff, the receipt of those monies was wrongful because the rates consumers paid to Virdian were too high and out of line with market conditions, and did not represent the "energy cost savings" allegedly promised. *Id.* In other words, Plaintiff expected to pay less than he did. Yet, Plaintiff had a valid contract with Viridian. The Contract contained the pricing terms by which Viridian received a monetary benefit from Plaintiff. As the variable rate was set forth in the parties' agreement, Viridian was not "unjustly enriched." *J. Roland Dashiell*, 747 A.2d at 600; *Louers*, 2013 WL 6257572, at *7; *FLF*, 999 F. Supp. 2d at 642.

---

[9] The *Mass Transit* court explained:

> The reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those risks defeated. As a result, they will have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.

471 A.2d at 1126.

Plaintiff's unjust enrichment claim fails to state a claim even if pled in the alternative to his breach of contract claim. Viridian has not retained any benefit without providing a service in exchange. Viridian provided energy service and received a benefit (payment). Plaintiff received energy service and paid for that service. Mere disagreement about the rate does not constitute unjust enrichment. Plaintiff pleads that "consumers" – presumably including himself – expected future "energy cost savings" at the time they paid Viridian's allegedly inflated rates and, thus, conferred a benefit on Viridian. Compl., ¶ 95. It is difficult to ascertain how Viridian was unjustly enriched by charging for the energy service that Plaintiff admits he received. *Citaraminis v. Hallowell*, 613 A.2d 964, 972 (Md. 1992) (holding that, even if the lease were unenforceable by the landlords, the tenants' claim for unjust enrichment failed because they received the rental housing for which they paid).[10] For these reasons, Plaintiff fails to state a claim for unjust enrichment and Count VI of the Complaint should be dismissed.

---

[10]     *See also Faistl*, 2012 WL 3835815, at *8 ("Because Plaintiff received the gas and electric services he paid for, Plaintiff has failed to state a claim for unjust enrichment that is plausible on its face."); *Slack*, 2010 WL 5392845, at *9 ("Because Plaintiffs received the propane they paid for, Plaintiffs have failed to state a claim for unjust enrichment which is plausible on its face."); *In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *14 (D.N.J. Sept, 11, 2009) (dismissing unjust enrichment claim because "Plaintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they received.").

## IV.   CONCLUSION

For the foregoing reasons, Defendant Viridian Energy, LLC respectfully requests that its

Motion to Dismiss be granted and that Plaintiff's claims against it be dismissed with prejudice.

Dated:  October 16, 2014                    KELLEY DRYE & WARREN LLP


By: /s/ Daniel S. Blynn
Daniel S. Blynn (Bar no. 16115)
3050 K Street, NW, Suite 400
Washington, DC 20007
Telephone:  (202) 342-8634
Facsimile:  (202) 342-8451
DBlynn@kelleydrye.com

*Attorneys for Defendant Viridian Energy, LLC*


### CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October 2014, a copy of the foregoing motion to dismiss and memorandum of law in support thereof were served on all counsel of record via the Court ECF System.

By: /s/ Daniel S. Blynn
Daniel S. Blynn

# EXHIBIT 1

## TERMS AND CONDITIONS

VIRIDIAN ENERGY™ PA LLC ("VIRIDIAN") is licensed by the Maryland Public Service Commission ("MPSC") to supply electricity services in Maryland. The Company's license number is IR-1840.

VIRIDIAN will set the prices for electricity supply service that you pay. VIRIDIAN agrees to sell electricity supply service to you for the price and upon the terms & conditions set forth in this Electricity Sales Agreement ("Agreement"). You agree to receive and pay for electricity supply services from VIRIDIAN in accordance with the Agreement. You understand that the prices charged by VIRIDIAN for electricity supply services under this Agreement include the commodity and transmission prices for electricity and do not include any applicable taxes, utility distribution charges, or other utility fees or charges. The prices for electricity supply services are not regulated by the MPSC.

This Agreement authorizes VIRIDIAN to change your current electric supplier in the territory of your Local Distribution Company (LDC). VIRIDIAN will supply the electricity to the LDC , based on how much you consume, and the LDC will then distribute (deliver) the electricity to your service location.

**Term**: VIRIDIAN will begin furnishing your electricity supply service on a date set by the LDC. The Agreement will continue in force on a month-to-month basis until the Agreement is cancelled by either party per Sections 3 & 4 below.

**Price:** The price for electricity supply services will vary on a month-to-month basis. The price for the first month of electric generation and transmission service will be the price agreed upon in the Customer Application. After the first month of service, you agree and understand that charges may fluctuate with month-to-month wholesale market conditions applicable to the LDC service territory. Please visit www.VIRIDIAN.com for more information, current electricity supply prices and updates.

**Termination by Customer:** You may cancel your Agreement at any time without penalty by notifying the LDC or VIRIDIAN in advance in writing. Cancellation becomes effective upon the processing of your cancellation request by the LDC. You shall be obligated to pay for the electricity and related services provided pursuant to this Agreement, prior to the date that such cancellation becomes effective, including applicable late fees. Should you terminate this Agreement, you will be returned to the LDCs Standard Offer Service unless you choose another electric supplier.
**Termination or Amendment by VIRIDIAN:** VIRIDIAN may terminate this Agreement upon forty-five (45) days advance written notice. Additionally, VIRIDIAN may terminate this Agreement early upon fourteen (14) days advance written notice due to non-payment by you. Should an early cancellation occur, you may refer to the dispute resolution process below in Section 7. The effective date of termination under this provision will occur on the next applicable meter read date, and upon the effective date of termination with VIRIDIAN, you will be returned to the LDCs sales service and all unpaid balances will immediately become due. Additionally, upon thirty-five (35) days advance written notice, VIRIDIAN may propose to amend this Agreement as a result of any regulatory, tariff or procedural change that may affect our ability to serve you under this Agreement. You will have fifteen (15) days to accept or decline any proposed amendment hereunder.

**Billing & Payment:** You will receive a single consolidated bill from the LDC that includes the LDCs charges and VIRIDIAN's charges. The LDC will set your payment due date and payment address. Bills not paid in full by the due date will incur a late payment fee on unpaid balances in accordance with the LDCs billing policies and procedures. Budget billing is available upon request. Your budget amount will be the combination of a monthly LDC amount for distribution (delivery) and a monthly budget amount for VIRIDIAN's electricity supply charges. Any settlements or adjustments to either company's monthly budget bill amounts may not occur at the same time. VIRIDIAN reserves the right to make adjustments at any time.
**Dispute Procedures:** You may contact VIRIDIAN at 866.663.2508, or by mail at PO Box 1312, Stamford, CT 06901 with any questions regarding the Company's terms of service. If you are not fully satisfied after discussing your terms with VIRIDIAN, you may call the Maryland Public Service Commission at 800.492.0474, or the Maryland Attorney General's Office at 888.743.0023.

## TERMS AND CONDITIONS, Continued

**Emergency**: In the event of an emergency, such as a power failure or a downed power line, you should call the LDC. If your LDC is BGE, they may be reached at 877.778.2222. If your LDC is Pepco, they may be reached at 877.737.2662. If your LDC is Allegheny, they may be reached at 800.255.3443

**Limitations on Warranty & Damages**: You understand and agree that there are no warranties, either express or implied, associated with the electricity service provided by VIRIDIAN. The Company will bear no liability to you or any third party for consequential, punitive, incidental, special or other indirect damages.

**Force Majeure:** VIRIDIAN will not be responsible for supplying electricity to you in the event of any cause or circumstances beyond its control such as events of Force Majeure. The term "Force Majeure" shall include, without limitation, strike, stoppage in labor, inability to obtain necessary materials, natural disasters, earthquakes, fire, floods, ice, lightning, storms, snow, rain, hurricanes, wind, invasion, war, changes in federal, state or local law or regulation or ordinance or interpretation thereof or resulting change in any permit, license or approval requirement if such changes affect performance under this Agreement, acts of God or public enemies, failure or malfunction of system facilities and unscheduled outage of generating units or transmission facilities.

**Information Release Authorization:** By entering into this Agreement, for purposes of consolidated billing per Section 6 above, you authorize VIRIDIAN to obtain your information from the LDC concerning your account that includes, but is not limited to: billing history, payment history, account number, historical and future electricity usage, meter readings and characteristics of your electricity service. You may rescind this authorization at anytime by contacting VIRIDIAN. The Company will not release your confidential information without your consent.

**Assignment:** VIRIDIAN reserves the right to assign this Agreement to another energy supplier or other entity as authorized by the MPSC. Any required notice will be considered to have been made if mailed to you at the address in VIRIDIAN's records for your account.